UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-20953-CV-ALTONAGA
MAGISTRATE JUDGE REID

JAMES DARYL WEST,

      Plaintiff,

v.

MARK INCH et al.,

      Defendants.

## REPORT OF MAGISTRATE JUDGE

Plaintiff has filed a second amended complaint ("SAC") under 42 U.S.C. § 1983. [ECF No. 13]. The matter is presently before me for review under 28 U.S.C. § 1915(e). As discussed below, the SAC should be dismissed for failure to state a claim.

### I.    SAC's Allegations

Plaintiff is a prisoner in the custody of the Florida Department of Corrections ("FDOC"). [ECF No. 13 at 2]. Plaintiff was housed at Everglades Correctional Institution ("ECI") from April 2017 to July 2017. [*Id.* at 2]. Plaintiff suffers from "chronic osteoarthritis," which has caused him "irreparable damage to the cartilage between [his] bones['] joints [and resulted] in progressive destruction and erosion causing severe pain." [*Id.* at 9-10]. Chronic osteoarthritis "causes the [] cartilage that

1

acts as shock absorbers [between] all weight bearing joints to deteriorate . . . causing bone on bone rubbing." [ECF No. 13-1 at 6]. "At times the pain is unbearable when walking." [*Id.*]

Defendant Oscar Ortega is the "Chief Health Officer" at ECI. [*Id.* at 5]. Dr. Ortega saw plaintiff on May 1, 2017. [ECF No. 13-1 at 3]. Dr. Ortega noted that plaintiff's "right knee was much bigger and swollen." [*Id.*] Dr. Ortega never "actually touched plaintiff to feel the popping and clicking in the right knee." [*Id.*] Dr. Ortega refused to address why plaintiff's radiology report said "abnormal." [*Id.* at 3-4]. Dr. Ortega told plaintiff that he did not "qualify for a replacement pair of orthopedic shoes." [*Id.* at 4]. Dr. Ortega stated that "the customs and policies will [not] allow a replacement pair to be ordered." [*Id.*] Dr. Ortega lied about plaintiff's shoes "being in 'good shape.'" [*Id.*] Plaintiff had received a "pair of 'Apex Sport' size 9EEE [shoes] in July 2014." [*Id.* at 2].

Defendant Raquel Santos is a registered nurse at ECI. [ECF No. 13 at 5]. Nurse Santos apparently saw plaintiff on or around April 24, 2017 "for chronic pain and numbness in the lower back, right knee[,] and right foot." *See* [ECF No. 13-1 at 5, 60]. Plaintiff showed her that his "shoes['] bottoms were very slick with [no] traction" and had "leather [] coming apart from the shoes['] soles." [*Id.* at 5]. This caused "the shoe to flap when walking." [*Id.* at 2].

2

Nurse Santos also apparently saw plaintiff on or around June 20, 2017. *See* [*id.* at 5, 61, 65]. Plaintiff alleges that she saw him a third time, perhaps in July 2017. *See* [*id.* at 5, 62]. Plaintiff appears to allege that he complained about the condition of his shoes at these appointments as well. *See* [*id.* at 5].

Apparently, Nurse Santos refused "to provide any sort of pain medication . . . to give [] immediate pain relief" at these appointments. *See* [*id.*] Likewise, Dr. Ortega would only provide 600 milligrams of Ibuprofen, "which was ineffective at relieving plaintiff's constant pain." [*Id.* at 6].

On June 2, 2017, plaintiff "slipped and fell going to food service on a wet floor[,] severely reinjuring himself." [*Id.* at 5]. Apparently, on June 12, 2017, plaintiff again slipped on fell on a wet floor in food service, which also "severely injured" him. *See* [*id.* at 1-2, 23]. These slip and falls caused him "extreme pain in the lower lumbar, right knee[,] and right foot [when] hitting the concrete very hard." [ECF No. 13 at 10]. "Immediate numbness traveled throughout the lower body causing a tingly sensation." [*Id.*]

Defendant Barry Morris is the warden at ECI. [ECF No. 13 at 3]. On June 9, 2017, plaintiff showed Warden Morris his shoes and said he needed "replacement shoes." [ECF No. 13-1 at 3]. Warden Morris agreed and said he would email Janice Hills about their condition. [*Id.*]

3

Hills is "Health Services Administrator" at ECI. [ECF No. 13 at 5]. Hills allegedly refused to "authorize a replacement pair of orthopedic shoes or . . . a pair of [] brogans." [ECF No. 13-1 at 4]. Apparently, on May 12, 2017, plaintiff informed Hills in a grievance that his shoes were in poor condition and needed to be replaced and she denied his request. *See* [*id.* at 4, 51]. Hills denied this request based on cost considerations and not "sound medical [judgment]." [*Id.* at 4].

Plaintiff's remaining allegations primarily involve an alleged policy or custom to contain costs by limiting health care for inmates. ECI contracted with Wexford Health Services, Inc. to provide health care to inmates. [*Id.* at 6]. Plaintiff alleges that, as early as 2004, defendant Mark S. Inch, Secretary of the FDOC, "was aware that Wexford[']s primary way to contain its [costs] was through tight utilization management . . . [which] has been the only deciding factor in denying . . . effective pain medication and replacement orthopedic shoes." [*Id.* at 1]. "[T]hese cost saving customs and policies [] were the driving force behind [plaintiff] suffering on a daily basis so Wexford could maximize their profits." [*Id.*] "This has caused physical damage and deformity to all weight bearing joints." [*Id.*]

Defendant Daniel L. Conn is the CEO of Wexford. [ECF No. 13 at 3]. CEO Conn was "directly responsible for the operations and medical management of services provided and responsible for the manner in which Defendants operated at [ECI]." [ECF No. 13-1 at 1]. Plaintiff appears to allege that CEO Conn implemented

4

and/or enforced Wexford's cost-savings policy or custom, which caused him not to receive orthopedic shoes, which in turn caused him to slip and fall. *See* [*id.* at 1-2].

Defendant Schouest works for the FDOC in some capacity. *See* [ECF No. 13 at 2-3; ECF No. 13-1 at 2]. She was "personally involved in denying or returning all medical grievances [related to] plaintiff[']s medical care." [ECF No. 13-1 at 2]. This conduct allegedly caused plaintiff's slip and falls. [*Id.*] Schouest knew that plaintiff had received Apex Sport shoes in 2014 and about the cost-savings policy or custom. [*Id.*]

Plaintiff asserts an Eighth Amendment claim against all defendants. [ECF No. 13 at 4, 7, 10]. He seeks compensatory damages, punitive damages, and injunctive relief, including "a replacement pair of orthopedic shoes." [ECF No. 13 at 10; ECF No. 13-1 at 6].

## II.     Standard Under 28 U.S.C. § 1915(e)

"[Section] 1915(e) . . . applies to cases in which the plaintiff is proceeding IFP." *Farese v. Scherer*, 342 F.3d 1223, 1228 (11th Cir. 2003) (per curiam). Under 28 U.S.C. § 1915(e)(2):

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--
>
> (A) the allegation of poverty is untrue; or
>
> (B) the action or appeal--

>  (i) is frivolous or malicious;
>
>  (ii) fails to state a claim on which relief may be granted; or
>
>  (iii) seeks monetary relief against a defendant who is immune from such relief.

In reviewing the complaint under § 1915(e), the court takes the allegations as true and construes them in the most favorable light. *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003); *Maps v. Miami Dade State Att'y*, 693 F. App'x 784, 785 (11th Cir. 2017) (per curiam). Furthermore, courts hold complaints that *pro se* prisoners file to "less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).

Nonetheless, under § 1915(e)(2)(B)(i), courts may dismiss as frivolous claims that are "based on an indisputably meritless legal theory" or "whose factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

Furthermore, the same standards govern dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and dismissal for failure to state a claim under § 1915(e)(2)(B)(ii). *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). Thus, under § 1915(e)(2)(B)(ii), the court may dismiss a complaint that fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. Discussion

The SAC is no model of clarity. *See supra* pp. 1-5. Liberally construed, it appears that plaintiff alleges the following theories of relief under the Eighth Amendment: (1) deliberate indifference to medical needs based on the failure to adequately treat his osteoarthritis and associated pain; (2) deliberate indifference to medical needs based on the failure to prescribe him new orthopedic shoes; and (3) deliberate indifference to his safety based on the failure to give him new orthopedic shoes.

A.  <u>Deliberate Indifference to Medical Needs</u>

#### 1. *General Principles*

To prevail on a claim of deliberate indifference to serious medical needs, plaintiff must show: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009) (citation omitted); *see also Harper v. Lawrence Cty., Ala.*, 592 F.3d 1227, 1234 (11th Cir. 2010).

Here, plaintiff has adequately alleged that his osteoarthritis and associated pain was an objectively serious medical need. *See Brown v. Johnson*, 387 F.3d 1344,

1351 (11th Cir. 2004). The question, then, is whether he has adequately alleged that defendants were deliberately indifferent to this need and, if so, whether their indifference caused his injury.

"To establish . . . deliberate indifference to the serious medical need, the prisoner must prove three facts: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Id.* (citation omitted).

To establish subjective knowledge of a risk of serious harm, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and actually "draw the inference." *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

"Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (citation omitted).

    2.    *Failure to Treat Osteoarthritis and Associated Pain*

**a.**    **Dr. Ortega**

Plaintiff sues Dr. Ortega in his individual capacity. [ECF No. 13 at 5]. His allegations do not support a reasonable inference that Dr. Ortega was deliberately indifferent to his medical needs. He acknowledges that Dr. Ortega saw him on May

1, 2017. He also acknowledges that Dr. Ortega prescribed him 600 milligrams of Ibuprofen for his chronic pain. While plaintiff may disagree with Dr. Ortega's medical judgment, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's . . . course of treatment [does not] support a claim of [deliberate indifference]." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citations omitted). In short, these allegations do not suggest that Dr. Ortega disregarded his medical needs.

He appears to allege that Dr. Ortega's evaluation on May 1 was so cursory as to amount to no treatment at all. But he only alleges that Dr. Ortega never touched his right knee and refused to address why the radiology report said "abnormal." [ECF No. 13-1 at 3-4]. Absent more, these unadorned allegations do not support a reasonable inference that Dr. Ortega's treatment was so cursory as to amount to no treatment. *See Iqbal*, 556 U.S. at 678 (2009) ("A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (emphasis added) (citation omitted)); *cf. Estelle v. Gamble*, 429 U.S. 97, 107 (1976) ("[W]hether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment.").

Again, his allegations impel the inference that, after observing that his "right knee was "much bigger and swollen," Dr. Ortega prescribed him 600 milligrams of

Ibuprofen. *See* [ECF No. 13-1 at 3, 6]. Thus, at best, his allegations amount to "a complaint that [Dr. Ortega was] negligent in . . . treating a medical condition," which "does not state a valid claim of medical mistreatment under the Eighth Amendment." *See Estelle*, 429 U.S. at 106.

**b.     Nurse Santos**

Plaintiff sues Nurse Santos in her individual capacity. [ECF No. 13 at 5]. His allegations against her are conclusory. As relevant here, their thrust is that she would not prescribe pain medication at these appointments. *See supra* pp. 2-3. Plaintiff stated he was receiving pain medication from Dr. Ortega. He does not explain why the nurse should also prescribe pain medication. Thus, this allegation against Nurse Santos is conclusory and fails to state a facially plausible medical deliberate indifference claim. *See Iqbal*, 556 U.S. at 678.

3.     *Failure to Prescribe Plaintiff New Orthopedic Shoes*

**a.     Dr. Ortega**

Plaintiff also faults Dr. Ortega for refusing to prescribe him orthopedic shoes even though he knew that his Apex Sport shoes were in poor condition. But he has not clearly alleged that the poor condition of his Apex Sport shoes (no traction and soles that flapped) caused or added to his chronic pain. His allegations center on the pain that the osteoarthritis itself caused him and the pain he suffered after slipping

and falling. His allegations do not support a reasonable inference that the poor condition of his shoes caused him chronic pain.

**b.      Nurse Santos**

Plaintiff alleges that he thrice complained to Nurse Santos about the poor condition of his shoes. *See supra* pp. 2-3. This allegation is unsupported and conclusory and, thus, fails to state a facially plausible medical deliberate indifference claim. *See Iqbal*, 556 U.S. at 678. Any link between her failure to prescribe new shoes and his chronic pain is unapparent from the face of the complaint.

**c.      Defendant Hills**

Plaintiff sues Hills in her individual capacity. [ECF No. 13 at 5]. Hills refused to give him a new pair of orthopedic shoes or brogans, denying this request based on cost considerations and not "sound medical [judgment]." [ECF No. 13-1 at 4].

This allegation is conclusory and, hence, fails to state a facially plausible medical deliberate indifference claim. *See Iqbal*, 556 U.S. at 678. Even if Hills' decision to deny him new orthopedic shoes displayed deliberate indifference to his osteoarthritis, he has not adequately alleged that this decision caused him "unnecessary and wanton infliction of [additional] pain." *See Estelle*, 429 U.S. at 103 (citation and internal quotation marks omitted). Again, he has not alleged any link between the failure to receive new orthopedic shoes and his chronic pain.

B.    Deliberate Indifference to Safety

Plaintiff also appears to allege that certain defendants were deliberately indifferent to his safety because they failed to give him new shoes. Deliberate indifference claims based on slips and falls are generally not cognizable under the Eighth Amendment. *See, e.g.*, *Coleman v. Sweetin*, 745 F.3d 756, 764 & n.7 (5th Cir. 2014) (collecting cases); *Pyles v. Fahim*, 771 F.3d 403, 410 & n.25 (7th Cir. 2014) (collecting cases); *Jackson v. Arizona*, 885 F.2d 639, 641 (9th Cir. 1989), *superseded on other grounds by statute as stated in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000); *Smith v. Brown*, No. 1:12-CV-328-TWT-JSA, 2012 WL 5392154, at *2 (N.D. Ga. Sept. 25, 2012) (collecting cases), *report and recommendation adopted*, No. 1:12-CV-328-TWT, 2012 WL 5392114 (N.D. Ga. Nov. 5, 2012).

1.    *General Principles*

The Eighth Amendment requires prison officials to "provide humane conditions of confinement; prison officials must . . . take reasonable measures to guarantee the safety of the inmates[.]" *Farmer*, 511 U.S. at 832. "To prevail on a § 1983 claim alleging unconstitutional conditions of confinement, a plaintiff must show a condition of confinement that inflicted unnecessary pain or suffering, the defendant's deliberate indifference to the condition, and causation." *White v.*

*Cochran*, No. 16-17490-G, 2017 WL 6492004, at *3 (11th Cir. Nov. 27, 2017) (citing *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993)). To prove deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and actually "draw the inference." *See Farmer*, 511 U.S. at 837.

### 2. *Dr. Ortega, Nurse Santos, and Hills*

Plaintiff alleges that he slipped and fell twice due to the shoes' poor condition. But his allegations do not support a reasonable inference that Dr. Ortega actually drew the inference that wearing such shoes would cause plaintiff to slip and fall and injure himself. Absent more, it is implausible that Dr. Ortega's mere knowledge of plaintiff's worn-out shoes would lead him to actually infer that the shoes would cause plaintiff to slip and fall on a wet floor in food service.

Similarly, plaintiff has not adequately alleged that the poor condition of his shoes caused him to slip and fall and injure himself. His allegations are too vague and conclusory to reasonably support this inference. As pleaded, the SAC is equally amenable to the inference that the wetness of the floor caused him to slip and fall and that he would have slipped and fallen even had he had shoes with traction and soles that did not flap. *See Iqbal*, 556 U.S. at 682 (when evaluating a complaint's allegations for facial plausibility, the court may consider "obvious alternative explanation[s]" (citation and internal quotation marks omitted)).

Any deliberate indifference claim based on this theory against Nurse Santos would be incognizable for essentially the same reasons. Moreover, as noted, his allegations about Nurse Santos are too conclusory to support a § 1983 claim. *See supra* pp. 2-3; *Iqbal*, 556 U.S. at 678.

His allegation that Hills refused to give him new orthopedic shoes based on cost considerations is similarly conclusory and, hence, insufficient to state a § 1983 claim. *See supra* Part III(A)(2)(c).

### 3. *Warden Morris*

Plaintiff sues Warden Morris in his individual capacity. [ECF No. 13 at 3]. He alleges that he once showed Warden Morris his shoes and said he needed replacement shoes, after which Warden Morris emailed defendant Hills. [ECF No. 13-1 at 3]. This conclusory allegation fails to state a facially plausible deliberate indifference claim under any theory. *See generally supra.*

### C. Remaining Defendants

Plaintiff poorly delineates his claims against the remaining defendants. Therefore, for organization, the undersigned analyzes whether he has stated any § 1983 claim, irrespective of theory, against each defendant.

### 1. *Mark S. Inch*

Plaintiff sues Secretary Inch in his individual and official capacities. [ECF No. 13 at 2]. He alleges that Secretary Inch knew of Wexford's cost-savings policy or

custom. [ECF No. 13-1 at 1]. This allegation is conclusory and, hence, fails to state a facially plausible Eighth Amendment claim. *See Iqbal*, 556 U.S. at 678. Plaintiff points to no written policy and no oral policy statements made by any individual to support the claim. Likewise, this conclusory allegation does not support a reasonable inference that Secretary Inch was personally involved in the alleged Eighth Amendment violation, further vitiating plaintiff's individual-capacity claim. *See id.* at 677 (under § 1983 "each Government official . . . is only liable for his or her own misconduct"). The official-capacity claim against Secretary Inch fails because plaintiff has not adequately alleged a "continuing violation of federal law." *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996) (citation and internal quotation marks omitted).

### 2.   *Defendant Schouest*

Plaintiff sues defendant Schouest in her individual capacity. [ECF No. 13 at 3]. He alleges that she was "personally involved in denying or returning all medical grievances [related to] plaintiff[']s medical care." [ECF No. 13-1 at 2]. Further, he alleges that she knew that plaintiff had received Apex Sport shoes in 2014 and about the cost-savings policy or custom. [*Id.*]

These conclusory allegations fail to state a facially plausible Eighth Amendment claim for the above reasons. *See generally supra.* Furthermore, any due process claim based on her alleged failure to properly handle his grievances would

fail. *See Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011) (per curiam) ("[A] prison grievance procedure does not provide an inmate with a constitutionally protected interest[.] . . .").

### 3.  *CEO Conn*

Plaintiff sues CEO Conn in his individual capacity. [ECF No. 13 at 3]. However, he has not alleged that CEO Conn was personally involved in the alleged deliberate indifference to his medical needs and safety. *See* [ECF No. 13-1 at 1]. Thus, this claim is not cognizable. *See Iqbal*, 556 U.S. at 677. Furthermore, he alleges that CEO Conn implemented and/or enforced Wexford's cost-savings policy or custom, which caused him not to receive orthopedic shoes, which in turn caused him to slip and fall. *See* [ECF No. 13-1 at 1-2]. However, this conclusory allegation does not support a reasonable inference that said policy caused plaintiff any additional pain or to slip and fall. *See Iqbal*, 556 U.S. at 678. Thus, he has not adequately alleged that this custom or policy caused a constitutional violation. *See Craig v. Floyd Cty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011).

In short, plaintiff has not stated a cognizable § 1983 claim against CEO Conn, irrespective of theory of relief.

## IV.  Recommendations

As discussed above, plaintiff's second amended complaint [ECF No. 13] should be DISMISSED under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a

claim. All claims except plaintiff's individual-capacity claims against Dr. Ortega and Nurse Santos should be DISMISSED WITHOUT LEAVE TO AMEND. Accordingly, the following parties should be TERMINATED as defendants: (1) Mark Inch; (2) Michelle Shouest; (3) Barry Morris; (4) Janice Hills; and (5) Daniel L. Conn.

Plaintiff should be permitted to file a third amended complaint ("TAC") asserting *only* claims of medical deliberate indifference against Dr. Ortega and Nurse Santos in their individual capacities based on their alleged deliberate indifference to his chronic pain associated with osteoarthritis. The order for a TAC should expressly prohibit plaintiff from raising any new claims or theories of liability or adding any new defendants. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

Furthermore, the order for a TAC should expressly caution plaintiff that the failure to file the TAC by a date certain will result in the dismissal of the case with prejudice for failure to state a claim, and that the TAC must be received by the Court and docketed by the date certain to be deemed filed by that date.

Additionally, the order for a TAC should require plaintiff to file his TAC on this District's form for § 1983 cases and prohibit him from submitting more than five (5) continuation sheets for any supplemental factual allegations.

Objections to this report may be filed with the district judge within fourteen days of receipt of a copy of the report. Failure to file timely objections shall bar plaintiff from a *de novo* determination by the district judge of an issue covered in this report and shall bar the parties from attacking on appeal factual findings accepted or adopted by the district judge except upon grounds of plain error or manifest injustice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Resolution Tr. Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) (citations omitted).

SIGNED this 28th day of July, 2020.

_____
UNITED STATES MAGISTRATE JUDGE

cc: James Daryl West
651314
Cross City Correctional Institution
Inmate Mail/Parcels
568 NE 255th Street
Cross City, FL 32628
PRO SE