UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-20953-CIV-ALTONAGA/Reid

**JAMES DARYL WEST**,

    Plaintiff,

v.

**MARK INCH**, *et al.*,

    Defendants.

_____/

## ORDER

On May 5, 2020, Plaintiff, James Daryl West, filed a *pro se* Second Amended Verified Complaint for Violation of Civil Rights ("SAC") [ECF No. 13] under 42 U.S.C. section 1983, along with a "Statement of Claim Continued" [ECF No. 13-1] and attached exhibits (*see id.* 7–67), alleging Eighth Amendment violations against Defendants, Mark Inch, Michelle Schouest, Daniel L. Conn, Barry Morris, Janice Hills, Oscar Ortega, and Raquel Santos.[1] (*See generally* SAC; Statement of Cl.). Plaintiff filed his suit *in forma pauperis*. (*See* Application to Proceed in District Court Without Prepaying Fees or Costs [ECF No. 6]; Order Granting Plaintiff In Forma Pauperis Status and Establishing Debt of $350 [ECF No. 10]).

Under 28 U.S.C. section 1915(e), courts are permitted to dismiss a suit filed *in forma pauperis* "at any time if the court determines that . . . (B) the action or appeal (i) is frivolous or

---

[1] The Clerk referred the case to Magistrate Judge Lisette M. Reid for a report and recommendation on dispositive matters under Administrative Order 2019-2. (*See* Clerk's Notice [ECF No. 2]). Previously, Judge Reid ordered Plaintiff to amend his initial Complaint [ECF No. 1] because it was "excessively long and this deficiency [] compromised the court's ability to screen it efficiently and effectively." (Order for Am. Compl. [ECF No. 5] 1 (alteration added)). When Plaintiff failed to correct the deficiency in his Verified Amended Complaint [ECF No. 11], Judge Reid ordered him to file a second amended complaint. (*See* Order for Second Am. Compl. [ECF No. 12] 1–2).

malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." *Id.* § 1915(e)(2) (alteration added). On July 28, 2020, Judge Reid issued a Report of Magistrate Judge [ECF No. 16], recommending the Second Amended Complaint be dismissed in accordance with the screening provisions of section 1915(e) for failure to state a claim. (*See generally* Report).

## I. BACKGROUND

Plaintiff is a state prisoner who was housed at Everglades Correctional Institution ("ECI") from April 2017 to July 2017. (*See* SAC 9).[2] Defendant Inch is the Secretary of the Florida Department of Corrections ("FDOC"). (*See id.* 2). Defendant Schouest also works at the FDOC; the SAC lists her title as "IISC." (*Id.* 3). Defendant Conn is the CEO of Wexford Health Sources, a company contracted by the FDOC to provide medical care to inmates. (*See id.* 3–4). Defendant Morris is the warden at ECI. (*See id.* 3). Defendant Hills is the Health Services Administrator at ECI. (*See id.* 5). Defendant Ortega is the Chief Health Officer at ECI. (*See id.*). Defendant Santos is a registered nurse at ECI. (*See id.*).

Plaintiff suffers from "chronic osteoarthritis," which has progressively eroded the cartilage between his bones' joints and caused him "severe pain" and "permanent damage." (SAC 9–10). Plaintiff explains this condition "causes the [] cartilage that acts as shock absorbers between all the weight bearing joints to deteriorate and erode causing bone on bone rubbing. At times the pain is unbearable when walking." (Statement of Cl. 6 (alteration added)). "Plaintiff had received a 'pair of Apex Sport size 9EEE [shoes] in July 2014.'" (Report 2 (alteration in original; quotation marks omitted; quoting Statement of Cl. 2)). Plaintiff alleges on June 2 and June 12, 2017, he slipped and fell on a wet floor in food service because Defendants refused to provide him a

---

[2] The Court relies on the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

replacement pair of orthopedic shoes. (*See* SAC 10; Statement of Cl. 1–2, 5, 23). "These slip and falls caused him 'extreme pain in the lower lumbar, right knee[,] and right foot [when] hitting the concrete very hard.'" (Report 3 (alterations in original; quoting SAC 10)). He experienced "[i]mmediate numbness [] throughout the lower body[,] causing a tingly sensation." (SAC 10 (alterations added)).

Plaintiff had appointments with Dr. Ortega on May 1 and June 27, 2017, where Plaintiff "gave [Dr. Ortega] the history of the lower back, right knee[,] and right foot" and "explained that at times there's numbness and a tingly feeling." (Statement of Cl. 3 (alterations added)). During both appointments, Dr. Ortega compared Plaintiff's legs and knees. (*See id.*). Dr. Ortega "agreed that the right knee was much bigger and swollen" but "never actually touched Plaintiff to feel the popping and clicking in the right knee." (*Id.* (emphasis omitted)). Dr. Ortega refused to respond to Plaintiff's question why Plaintiff's radiology report said "abnormal." (*Id.* 3–4 (capitalization, emphasis, and quotation marks omitted)).

Dr. Ortega told Plaintiff he did not "qualify for a replacement pair of orthopedic shoes, during both appointments and in his grievance responses[,]" and lied in Plaintiff's health records about Plaintiff's shoes "being in 'good shape.'" (*Id.* 4 (alteration added)). Dr. Ortega "stated numerous times that the customs and policies will not allow a replacement pair to be ordered." (*Id.* (capitalization and emphasis omitted)). Dr. Ortega only prescribed Plaintiff 600 milligrams of ibuprofen, "which was ineffective at relieving Plaintiff's constant pain." (*Id.* 6). According to Plaintiff, Dr. Ortega's "decisions were based on customs and policies to save money and maximize Wexfords [sic] profits in deliberate indifference toward [] Plaintiff and his serious medical needs[.]" (*Id.* 4 (alterations added)).

Hills, the Health Services Administrator, "would not authorize a replacement pair of

3

orthopedic shoes or at the minimum a pair of state brogans size 9EEE." (*Id.* 4). "Hills was fully aware of the shoes [sic] condition because Plaintiff personally spoke to her twice and showed her the shoes had no traction and were slick on the bottoms[,]" and she also saw "how the leather was tearing away from the shoes causing the shoe to flap when walking." (*Id.* (alteration added; capitalization and emphasis omitted)). Plaintiff attaches several grievances and inmate requests for a replacement pair of shoes, all which Hills denied. (*See id.* 20–23, 31–32, 48–51, 53–54, 56–57). Plaintiff alleges "these denials were based on cost's [sic] and policy[,] not sound medical judgement [sic]." (*Id.* 4 (alteration added; capitalization and emphasis omitted)).

Nurse Santos saw Plaintiff on three separate occasions "for chronic pain and numbness in the lower back, right knee[,] and right foot" (*id.* 5 (alteration added)) on April 24, 2017; June 20, 2017; and sometime in July 2017 (*see* Report 2–3; *see also* Statement of Cl. 61–62, 65). Plaintiff showed her "the shoes [sic] current condition and thier [sic] need to be replaced[,]" specifically because "the shoes [sic] bottoms were very slick with no traction and [] the leather was coming apart from the shoes [sic] soles." (Statement of Cl. 5 (alterations added; capitalization and emphasis omitted)). During all three appointments, Nurse Santos "refused to provide any sort of pain medication to relieve [] Plaintiffs [sic] pain" and "told Plaintiff that Wexfords [sic] customs and policies would not authorize her to give any immediate pain relief." (*Id.* (alterations added; capitalization and emphasis omitted)).

Plaintiff alleges Warden Morris was deliberately indifferent to Plaintiff's medical needs when they were brought to his attention. (*See* Statement of Cl. 3). On June 9, 2017, Plaintiff "showed Warden Morris his shoes and said he needed 'replacement shoes.'" (Report 3 (quoting Statement of Cl. 3)). Warden Morris "agreed and stated he would e-mail Janice Hills" about the shoes' condition. (Statement of Cl. 3). On June 23, 2017, Plaintiff again spoke to Warden Morris

4

and told him that "because of the shoes [sic] condition [Plaintiff] slipped and fell twice on wet floors causing Plaintiff to reinjure himself." (*Id.* (alteration added)). According to Plaintiff, Warden Morris could have overridden Wexford's refusals to order new shoes "once he visually observed them has [sic] needing to be replaced." (*Id.*).

Schouest "was personally involved in denying or returning all medical grievances as the [FDOC's] final say in Plaintiffs [sic] medical care." (Statement of Cl. 2 (alteration added)). "Schouest was aware of the [FDOC's] shoe policy . . . [that] allowed Plaintiff to be issued a pair of" Apex Sport shoes in July 2014. (*Id.* (alterations added)). Plaintiff alleges it was "her deliberate indifference towards Plaintiffs [sic] serious medical needs that caused him to be seriously injured on June 2, 2017, and again on June 12, 2017." (*Id.*).

Plaintiff alleges the FDOC had a policy or custom of deliberate indifference that caused Plaintiff's injuries. (*See id.* 1). As early as 2004, the Secretary of the FDOC "was aware that Wexfords [sic] primary way to contain its cost's [sic] was through tight utilization management[,] [which] has been the only deciding factor in denying . . . effective pain medication and replacement orthopedic shoes." (*Id.* (alterations added)). Plaintiff includes a Progress Report by the Florida Legislature's Office of Program Policy Analysis and Government Accountability (*see id.* 10–14), which describes the privatization of health services as one of the FDOC's "cost containment measures" (*id.* 11). According to Plaintiff, "these cost saving customs and policies [] were the driving force behind [] Plaintiff suffering on a daily basis so Wexford could maximize their profits." (*Id.* 1 (alterations added)). "This has caused physical damage and deformity to all weight bearing joints." (*Id.*).

Conn "was directly responsible for the operations and medical management of services provided and responsible for the manner in which Defendants operated at [ECI]." (*Id.* (alteration

5

added)).  "Plaintiff appears to allege that CEO Conn implemented and/or enforced Wexford's cost-savings policy or custom, which caused [Plaintiff] not to receive orthopedic shoes, which in turn caused him to slip and fall."  (Report 4–5 (alteration added; citing Statement of Cl. 1–2)).

Plaintiff filed the SAC on May 5, 2020 against Secretary Inch, in his individual and official capacities; and Schouest, Conn, Warden Morris, Hills, Dr. Ortega, and Nurse Santos, all in their individual capacities.  (*See* SAC 3, 5).  "Liberally construed, it appears that [P]laintiff alleges the following theories of relief under the Eighth Amendment: (1) deliberate indifference to medical needs based on the failure to adequately treat his osteoarthritis and associated pain; (2) deliberate indifference to medical needs based on the failure to prescribe him new orthopedic shoes; and (3) deliberate indifference to his safety based on the failure to give him new orthopedic shoes."  (Report 7 (alteration added)).  Plaintiff seeks compensatory and punitive damages; and injunctive relief, including referrals to specialists, a replacement pair of orthopedic shoes, effective pain medication, and diagnostic testing.  (*See* SAC 10; Statement of Cl. 6).

## II.  DISCUSSION

The Report recommends all claims except Plaintiff's claims against Dr. Ortega and Nurse Santos be dismissed without leave to amend for failure to state claims for relief, and that Plaintiff be permitted to file a third amended complaint asserting only claims against Dr. Ortega and Nurse Santos in their individual capacities based on their alleged deliberate indifference to Plaintiff's chronic pain associated with his osteoarthritis.[3]  (*See* Report 16–17).

When a magistrate judge's "disposition" has been properly objected to, district courts must

---

[3] The Report recommends the Court require Plaintiff to file the third amended complaint on this District's form for section 1983 cases and prohibit him from submitting more than five continuation sheets for any supplemental factual allegations.  (*See* Report 17).  The Report further recommends the Court set a deadline by which the third amended complaint must be received and docketed to be deemed filed and states the Court should expressly caution Plaintiff that failure to file the third amended complaint will result in dismissal of the case with prejudice.  (*See id.*).

6

review the disposition *de novo*. Fed. R. Civ. P. 72(b)(3). Plaintiff filed Objections [ECF No. 32] to the Report on November 17, 2020. Accordingly, the Court reviews each of the Report's conclusions *de novo*.[4]

### A. Deliberate Indifference to Medical Needs

To prevail on a claim of deliberate indifference to a serious medical need, a plaintiff must show "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009) (citation omitted). Generally, to establish a prison official's deliberate indifference, a plaintiff must show the official had subjective knowledge of a risk of serious harm and disregarded that risk by conduct that is "more than mere negligence." *Mitchell v. Nobles*, 873 F.3d 869, 876 (11th Cir. 2017) (quotation marks and citation omitted).

For an official to have subjective knowledge of a risk of serious harm, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious

---

[4] Plaintiff objects to the Report's purported failure to consider certain allegations in the SAC and Statement of Claim as well as the exhibits attached to the Statement of Claim. (*See* Objs. 1–7). Plaintiff also raises certain facts in his Objections that were not alleged in the SAC or Statement of Claim. (*See generally id.*; *compare, e.g.*, SAC 9 ("Plaintiff has been diagnosed with chronic osteoarthritis, chronic degenerative joint disease."), *with, e.g.*, Objs. 6 ("Plaintiff has also been diagnosed with chronic degenerative disc and joint disease; and chronic degenerative disease of the MTP joints; planter [sic] calcaneal bone spurs.").

In a *de novo* evaluation of the Report's conclusions, the Court considers the allegations of the SAC and Statement of Claim as well as the attached exhibits, to the extent their relevance is explained in the allegations. *See Watts v. Phillips*, No. 1:16-cv-399, 2016 WL 3349167, at *2 (N.D. Ga. June 16, 2016) (finding the complaint did not constitute a short and plain statement of the claim under Federal Rule of Civil Procedure 8(a)(2) where the *pro se* plaintiff included several attachments, the relevance of which he did not explain). The Court does not consider new facts raised for the first time in Plaintiff's Objections. *See Sanford v. Toby*, No. cv 311-060, 2012 WL 694355, at *1 (S.D. Ga. Mar. 1, 2012) ("While [the p]laintiff would like to use his objections to inject new allegations upon receiving an unfavorable analysis from the Magistrate Judge, to allow him to do so would frustrate systematic efficiencies and reduce the role of the Magistrate Judge to that of a mere dress rehearser. Therefore, the [c]ourt will not consider the new factual allegations set forth in [the p]laintiff's objections to the R & R." (alterations added; quotation marks citations, and footnote call number omitted)). Plaintiff must include all relevant allegations he wishes the Court to consider in a third amended complaint.

harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[T]he official must have responded to the known risk in an unreasonable manner, in that he or she knew of ways to reduce the harm but knowingly or recklessly declined to act." *Marbury v. Warden*, 936 F.3d 1227, 1233 (11th Cir. 2019) (alteration added; quotation marks and footnote call number omitted). "Conduct that is more than mere negligence includes: (1) grossly inadequate care; (2) a decision to take an easier but less efficacious course of treatment; and (3) medical care that is so cursory as to amount to no treatment at all." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011) (citation omitted).

The Report accepts Plaintiff's alleged osteoarthritis and associated pain constitute a serious medical need. (*See* Report 7). Nonetheless, the Report finds Plaintiff has failed to state Eighth Amendment claims for medical deliberate indifference. (*See id.* 8–11).

### 1. Failure to Treat Osteoarthritis and Associated Pain

*Dr. Ortega.* The Report concludes that while Plaintiff may disagree with Dr. Ortega's medical judgment in prescribing him 600 milligrams of ibuprofen for his chronic pain, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's . . . course of treatment [does not] support a claim of [deliberate indifference]." (Report 9 (alterations in original; quoting *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991))). The Report further concludes Plaintiff's allegations that Dr. Ortega refused to touch his right knee or address the radiology report "do not support a reasonable inference that Dr. Ortega's treatment was so cursory as to amount to no treatment. . . . [A]t best, [Plaintiff's] allegations amount to a complaint that Dr. Ortega was negligent in treating a medical condition, which does not state a valid claim of medical mistreatment under the Eighth Amendment." (*Id.* (alterations added; other alterations adopted; citations omitted)).

8

In his Objections, Plaintiff complains that Dr. Ortega failed to provide additional treatment, such as referring Plaintiff to an outside specialist, prescribing stronger pain medication, conducting additional diagnostic testing, or recommending non-emergency surgical repair. (*See* Objs. 7–9). Plaintiff also asserts Dr. Ortega's evaluation was "so cursory as to amount to no treatment at all" and "[t]heres [sic] no way [Dr.] Ortega reviews all the radiologist reports and comments on the serious medical needs of Plaintiff." (*Id.* 8 (alterations added)).

These points fail to cast doubt on the Report's conclusion that Plaintiff has failed to state a medical deliberate indifference claim against Dr. Ortega. The allegations regarding Dr. Ortega's examination of Plaintiff and his decision to prescribe Plaintiff 600 milligrams of ibuprofen — rather than pursuing a different course of treatment — are insufficient to invoke Eighth Amendment protection. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976) ("[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment." (alteration added)); *Ross v. Corizon, LLC*, No. 3:14-cv-1311, 2016 WL 7856416, at *11 (M.D. Fla. June 16, 2016) ("[T]he fact that [the p]laintiff has not been prescribed the particular drugs he desired or requested does not amount to a constitutional violation. At most, he has presented a claim of negligence or medical malpractice in this regard." (alterations added; citations omitted)).

Allegations regarding a decision to withhold treatment that is not based on medical judgment may be sufficient to sustain a medical deliberate indifference claim. *See Dittmer v. Bradshaw*, No. 12-81309-cv, 2015 WL 471371, at *6 (S.D. Fla. Feb. 4, 2015) (finding the plaintiff stated a *prima facie* case for deliberate indifference to a serious medical need where he alleged the doctor told him he decided not to order an MRI, although he recommended that the plaintiff have

9

one, because "the jail was 'cheap' and would not approve one"). Plaintiff alleges Dr. Ortega's "decisions were based on customs and policies to save money and maximize Wexfords [sic] profits in deliberate indifference toward [] Plaintiff and his serious medical needs[.]" (Statement of Cl. 4 (alteration added)). In his Objections, Plaintiff states "Dr. Ortega knew that the[] abnormal x-rays require expensive additional testing and treatments." (Objs. 9 (alteration added)). But Plaintiff does not allege facts demonstrating Dr. Ortega decided on the course of treatment for financial reasons or for other reasons apart from medical judgment.[5] Accordingly, Plaintiff has failed to show Dr. Ortega unreasonably responded to Plaintiff's known serious medical need and thus has not sufficiently stated a medical deliberate indifference claim against the dotor.

*Nurse Santos.* The Report finds the SAC's allegation that Nurse Santos did not prescribe Plaintiff any pain medication fails to state a facially plausible deliberate indifference claim. (*See* Report 10). The Report states "Plaintiff stated he was receiving pain medication from Dr. Ortega. He does not explain why the nurse should also prescribe pain medication." (*Id.*). Plaintiff maintains he has stated a claim because Nurse Santos "allowed the [FDOC's] customs and policys [sic] with Wexford to deny [him] immediate pain relief" and "could have g[iven] [him] a handfull [sic] of over the counter medication" instead, but she "made the decision to take the easier but less efficacious course of treatment that amounted to no treatment at all."[6] (Objs. 9 (alterations added)).

Yet, an unsatisfactory decision regarding the provision of pain medication cannot sustain Plaintiff's deliberate indifference claim. *See Hines v. Parker*, 725 F. App'x 801, 805 (11th Cir.

---

[5] Confusingly, Plaintiff also states Dr. Ortega "refused stronger medication, additional diagnostic testing that[] [was] needed to see the amount of damage to the effected [sic] areas" but that "[t]his was *not* done pursuant to Wexfords [sic] policys [sic]." (Objs. 8 (alterations and emphasis added)).

[6] Plaintiff also states Nurse Santos "lied" about his shoes "being in 'good shape'" despite their poor condition, and "[i]f she lied about the shoes what else would she lie about." (Objs. 9 (alteration added)). As discussed in further detail below, Plaintiff has failed to allege causation between the failure to prescribe him new shoes and his chronic pain.

2018) ("Hines's disagreement with Nurse Practitioner Browning's choice of which pain medicine to administer does not establish deliberate indifference." (citation omitted)). It is unclear from Plaintiff's allegations what Nurse Santos knew about the level of pain Plaintiff was experiencing or the pain medication Plaintiff was previously prescribed. Plaintiff has not shown Nurse Santos recklessly disregarded a known risk that the failure to provide pain medication would cause Plaintiff serious harm. *See Littles v. Lilly*, No. 3:10-cv-203, 2010 WL 5399215, at *9 (N.D. Fla. Nov. 23, 2010), *report and recommendation adopted*, 2010 WL 5395824 (N.D. Fla. Dec. 23, 2010) (finding the alleged facts regarding the nurses' failure to provide stronger pain medication did not suggest the nurses created a substantial risk of serious harm to the plaintiff's health or that their conduct "rose beyond the level of negligence to deliberate indifference"). Accordingly, Plaintiff's medical deliberate indifference claim against Nurse Santos fails.

### 2. Failure to Prescribe New Orthopedic Shoes

The Report concludes Plaintiff has failed to state medical deliberate indifference claims against Dr. Ortega, Nurse Santos, and Hills based on their failure to prescribe him new orthopedic shoes because he does not allege a link between the failure to prescribe new shoes and his chronic pain. (*See* Report 10–11). For the claim against Hills, the Report finds Plaintiff's allegation that Hills denied Plaintiff's request for a new pair of orthopedic shoes or brogans based on cost considerations is conclusory and does not demonstrate that Hills's actions caused the unnecessary and wanton infliction of additional pain. (*See id.* 11).

As to causation,[7] Plaintiff asserts the shoes' poor condition added to Plaintiff's chronic pain because "the sole flapped" and the shoes "caused [] Plaintiff to be severely injured twice[;]"

---

[7] Plaintiff makes various objections regarding Defendants' deliberate indifference to his need for new shoes. (*See* Objs. 10–11). As the Report's conclusion relies primarily on Plaintiff's failure to demonstrate causation between Defendants' alleged deliberate indifference and Plaintiff's injuries, the Court does not address the objections unrelated to that issue.

and the shoes' lack of traction "caused Plaintiff to slip and fall hard" when the soles made contact with the wet floor. (Objs. 10 (alterations added)). Whether Plaintiff has stated claims for relief based on his accidental falls is discussed separately below.

Plaintiff further states Hills's failure to provide him new shoes "caused unnecessary and wanton infliction of pain on a daily basis because [of] the way the shoe flapped rubbing the heel of the foot." (*Id.* 11 (alteration added)). But the allegations in the SAC and Statement of Claim do not indicate the shoes themselves exacerbated Plaintiff's chronic pain. *See Maglio v. Bhadja*, No. 09-14042-Civ, 2010 WL 5476731, at *5–6 (S.D. Fla. Dec. 13, 2010), *report and recommendation adopted*, 2010 WL 5478606 (S.D. Fla. Dec. 30, 2010) (concluding the plaintiff's deliberate indifference claim against prison doctor failed where the plaintiff's allegations did not demonstrate causation between the doctor's alleged deliberate indifference and the plaintiff's injury). In sum, Plaintiff has failed to state deliberate indifference claims based on the failure to provide him new shoes.

### B. Deliberate Indifference to Safety

To prevail on a claim alleging unconstitutional conditions of confinement, "a plaintiff must show a condition of confinement that inflicted unnecessary pain or suffering, the defendant's deliberate indifference to the condition, and causation." *White v. Cochran*, No. 16-17490, 2017 WL 6492004, at *3 (11th Cir. Nov. 27, 2017) (citing *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993)). To show "deliberate indifference on the part of a prison official, a plaintiff inmate must show: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Thomas v. Bryant*, 614 F.3d 1288, 1312 (11th Cir. 2010) (citations omitted). As stated, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference." *Farmer*, 511 U.S. at 837.

The Report notes "[d]eliberate indifference claims based on slips and falls are generally not cognizable under the Eighth Amendment." (Report 12 (alteration added; collecting cases)).

***Dr. Ortega, Nurse Santos, and Hills.*** The Report concludes that while Plaintiff alleges he slipped and fell twice due to his shoes' poor condition, his allegations do not demonstrate these three Defendants drew the inference that the condition of the shoes or the failure to provide Plaintiff new shoes would cause him to slip and fall. (*See* Report 13–14).

Plaintiff disagrees with the conclusion "that the allegations do not support a reasonable inference that Dr. Ortega actually drew the inference that wearing such shoes would cause Plaintiff to slip and fall and injure himself" given the shoes' obviously poor condition. (Objs. 12). Plaintiff points out there "were hundreds of inmates going in the chow hall and nobody else had issues because of the wet floor. This accident was directly caused by the worn out shoes and the slick soles." (*Id.*). Plaintiff asserts Nurse Santos did not correctly document the shoes' true condition (*see id.* 10; *see also id.* 12); and Hills was deliberately indifferent to the "obvious need" for new shoes, as she refused to authorize Plaintiff's request for a pair of state brogans (*id.* 13).

At most, Plaintiff's allegations constitute non-actionable negligence. Plaintiff maintains Defendants knew about his shoes' poor condition, and he subsequently slipped and fell twice on a wet floor because of the shoes' slippery soles. (*See* SAC 10; Statement of Cl. 1–2, 4–5; Objs. 12–13). These allegations are insufficient to sustain Eighth Amendment claims of deliberate indifference to safety, as they do not demonstrate Defendants inferred a substantial risk of serious harm that would befall Plaintiff and recklessly disregarded that risk. *See Smith v. Brown*, No. 1:12-cv-328, 2012 WL 5392154, at *2 (N.D. Ga. Sept. 25, 2012), *report and recommendation adopted*, 2012 WL 5392114 (N.D. Ga. Nov. 5, 2012) ("Even if . . . Defendants were aware that

13

the shower shoes were slippery combined with wet and/or mopped floors, Plaintiff has not demonstrated that his claim constitutes anything more than negligence — which is not actionable under [section] 1983." (alterations added; collecting cases)); *Wynn v. Ankoh*, No. 1:04 cv 37, 2006 WL 2583370, at *2 (M.D. Ga. Sept. 6, 2006) (finding the plaintiff's allegations that he slipped and fell while performing floor stripping detail and wearing rubber boots with inadequate traction at most stated a negligence claim that was not cognizable under section 1983). Accordingly, Plaintiff's deliberate indifference claims fail on this basis.

*Warden Morris.* The Report concludes the SAC's allegations regarding Warden Morris — that before Plaintiff's alleged falls, Plaintiff once showed Warden Morris his shoes and said he needed replacement shoes, after which Warden Morris e-mailed Hills about the shoes' condition — "fail[] to state a facially plausible deliberate indifference claim under any theory." (Report 14 (alteration added)). Plaintiff asserts the two accidents could have been prevented had Warden Morris exercised his "authority to order [] Hills to at the minimum contact laundry for brogans, so [] Plaintiff could stop wearing the worn out shoes" or "contacted Wexford or Central Office regarding Plaintiffs [sic] need." (Objs. 13 (alterations added)).

Here, too, Plaintiff's allegations do not constitute anything more than negligence. That Warden Morris "agreed" Plaintiff needed a replacement pair of shoes does not mean he was subjectively aware of a substantial risk of serious harm; nor does Plaintiff demonstrate Warden Morris recklessly disregarded such a risk. (Statement of Cl. 3). Plaintiff has failed to state a deliberate indifference claim against Warden Morris.

### C. Remaining Defendants

*Secretary Inch.* The Report concludes Plaintiff's individual-capacity claim against Secretary Inch should be dismissed because Plaintiff's conclusory allegation that Secretary Inch

knew of Wexford's cost-savings policy or custom does not support a reasonable inference that Secretary Inch was personally involved in the alleged Eighth Amendment violations. (*See* Report 15). The Report further concludes the official-capacity claim should be dismissed because Plaintiff has not adequately alleged a "'continuing violation of federal law.'" (*Id.* (quoting *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1993))).

Plaintiff does not appear to object to the Report's conclusion regarding the individual-capacity claim against Secretary Inch. (*See* Objs. 14–15). The absence of allegations describing Secretary Inch's role in the events giving rise to Plaintiff's suit is indeed fatal to Plaintiff's individual-capacity claim. (*See generally* SAC); *see also Tullis v. Inch*, No. 4:19-cv-225, 2019 WL 4774085, at *3 (N.D. Fla. Aug. 28, 2019), *report and recommendation adopted*, 2019 WL 4765141 (N.D. Fla. Sept. 29, 2019) (finding the plaintiff failed to state a claim against the Secretary of the FDOC where the amended complaint "fail[ed] to allege any facts of specific wrongdoing . . . as to the Secretary" (alterations added)); *Gilley v. Ryan*, No. 09-22130-Civ, 2009 WL 2929418, at *1–2 (S.D. Fla. Sept. 9, 2009) (overruling objections to report recommending dismissal of deliberate indifference claims against supervisors who were not alleged to have been personally involved in the alleged constitutional violations).

As to the official-capacity claim, Plaintiff does not appear to contest the Report's conclusion that he has failed to allege a continuing violation of federal law that would preclude Eleventh Amendment immunity for an official-capacity suit against a state official. (*See* Objs. 14–15); *see also Lucas v. Inch*, No. 4:18-cv-286, 2019 WL 2745744, at *3 (N.D. Fla. May 23, 2019), *report and recommendation adopted*, 2019 WL 2745739 (N.D. Fla. June 29, 2019) (finding the Secretary of the FDOC was entitled to Eleventh Amendment immunity where there were "no allegations of ongoing issues").

> Plaintiff asserts the FDOC
>
> entered into a contract with Wexford knowing they [sic] have customs and policys [sic] of directing and incentivizing its employees to deny all non-emergency surgical care to contain its costs and maximize its profitability which has caused an unacceptable decline in the quality of care that was provided to [] Plaintiff[.] . . . Secretary [] Inch knew of and condones or encourages the custom of the [FDOC's] healthcare employees and Wexfords [sic] employees to deny necessary medical care for inmates including [] Plaintiff[.] . . . This has been a longstanding and widespread practice that has been deemed authorized by the policymaking officials because they have known about it and failed to stop it.

(Objs. 14–15 (alterations added)).

While a plaintiff may bring a claim against a municipal entity arising from a purported custom or policy that constituted deliberate indifference to the plaintiff's constitutional rights, *see McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citation omitted), Plaintiff has not sued a municipal entity. In sum, Plaintiff has failed to state individual-capacity or official-capacity claims against Secretary Inch.

***Schouest.*** The Report concludes the SAC fails to state a facially plausible Eighth Amendment claim against Schouest for her denial of Plaintiff's medical grievances. (*See* Report 15). Plaintiff objects to this conclusion, stating Schouest "reviewed the medical records" and "allowed the staff of [the FDOC] and Wexford to continuously deny [] Plaintiff the additional care he needed. . . . [She] was aware of the Plaintiffs [sic] needs and fail[ed] to do anything to relieve the pain suffered from on a daily basis." (Objs. 16 (alterations added)).

Assuming Schouest knew about Plaintiff's complaints of chronic pain, Plaintiff has nonetheless failed to show she acted with deliberate indifference to his medical needs. As with Plaintiff's allegations against Dr. Ortega and Nurse Santos, Plaintiff has not demonstrated Schouest responded to a known risk of serious harm in an unreasonable manner. And even if Schouest was aware Plaintiff had been issued Apex Sport shoes in 2014 and that the shoes were in

16

poor condition based on the information in his grievances (*see* Statement of Cl. 2), Plaintiff does not allege any facts demonstrating his accidental falls were the product of something more than negligence. *See Smith v*, 2012 WL 5392154, at *2; *Wynn*, 2006 WL 2583370, at *2. Accordingly, Plaintiff has not sufficiently stated an Eighth Amendment claim against Schouest.

***Conn.*** The Report concludes the claim against Conn should be dismissed because the SAC does not allege Conn was personally involved in the alleged deliberate indifference to Plaintiff's medical needs and safety. (*See* Report 16). Plaintiff insists Conn "was responsible for and implement[ed] the cost saving customs and policys [sic]" that allegedly led to Plaintiff's injuries. (Objs. 16 (alterations added)). Nonetheless, like the individual-capacity claim against Secretary Inch, Plaintiff's claim against Conn fails because the SAC does not allege Conn's personal involvement in the alleged Eighth Amendment violations. *See Tullis*, 2019 WL 4774085, at *3; *Gilley*, 2009 WL 2929418, at *1–2.

### III. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Report **[ECF No. 16]** is **ACCEPTED AND ADOPTED** as follows:

1. Plaintiff's Second Amended Verified Complaint for Violation of Civil Rights **[ECF No. 13]** is **DISMISSED**.

2. By **December 23, 2020**, Plaintiff may refile a third amended complaint asserting only claims of deliberate indifference to serious medical needs against Defendants Oscar Ortega and Raquel Santos in their individual capacities based on their alleged deliberate indifference to Plaintiff's chronic pain associated with his osteoarthritis. The third amended complaint may not raise any new claims or theories of liability or add any new defendants.

3. The third amended complaint must be submitted on this District's form for section 1983 cases and may not include more than five continuation sheets for any supplemental factual allegations.

4. The third amended complaint must be <u>received and docketed</u> by **December 23, 2020** to be deemed filed. This deadline will not be extended. Failure to file a third amended complaint by the deadline will result in a dismissal of the case.

**DONE AND ORDERED** in Miami, Florida, this 30th day of November, 2020.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:   Plaintiff, James Daryl West, *pro se*;
      Magistrate Judge Lisette M. Reid